UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IMPALA TERMINALS BURNSIDE LLC, ET AL.                CIVIL ACTION

v.                                                    NO. 19-12584

MARQUETTE TRANSPORTATION                             SECTION "F"

COMPANY, LLC, *in personam*, ET AL.

ORDER AND REASONS

Before the Court are three motions: a motion for partial summary judgment by each side and the plaintiffs' motion to strike a portion of testimony in the summary judgment record. For the reasons that follow, the motions for partial summary judgment are DENIED, and the plaintiffs' motion to strike is DENIED as moot.

**Background**

This *in personam* and *in rem* admiralty litigation arises out of an early morning allision in the Mississippi River. Before dawn on March 14, 2019, Marquette Transportation Company, LLC's downbound towing vessel C. MICHAEL REEVES, with her 14 barges in tow, struck Impala Terminals Burnside LLC's sacrificial dolphin and the northern end of its Continuous Barge Unloader (CBU) dock at Mile Marker 169.5 AHP on the left descending bank of the lower Mississippi River. Unbeknownst to the vessel captain and Impala. It was so dark that the captain could not see, and did not know,

1

that the vessel hit a sacrificial dolphin and the CBU dock.  No one at Impala did either until the sun came up.

Impala Terminals Burnside LLC leases and operates the Impala Terminal, a coal terminal facility near Burnside, Louisiana at Mile Marker 169.5 AHP on the left descending bank of the Lower Mississippi River.  Installed in 2014 and commissioned in 2015, the Impala Terminal includes the CBU dock, the uppermost river structure, which is used to discharge coal from barges.  There are also protective or "sacrificial" dolphins, constructed to protect the dock from impact by vessels.  Downriver from the CBU dock, there is a dock primarily used to load cargo on to ocean-going vessels.  The CBU dock was installed in 2014; the U.S. Army Corps of Engineers issued a permit to Impala in 2012.[1]  At the time of the allision, no navigational lights were installed on the Impala CBU dock.  After the allision, navigational lights were installed to comport with the facility's original design drawings.

The M/V C. MICHAEL REEVES is a 168-foot long, 40-foot wide, 6800-horsepower push boat owned and operated by Marquette Transportation Company, LLC.  The M/V C. MICHAEL REEVES was equipped with navigation equipment, including Rose Point, radar, spotlight, and swing meter, as well as three radios (or three

---

[1] On May 3, 2012, the USACE issued Impala Permit No. MVN-2011-2044-CO.

channels being monitored on the radio).  All functioning properly that morning.

Captain Michael Bailey, who has over 40 years of experience operating towing vessels, came on watch at 0500 hours;[2] the allision occurred within the first 20 minutes of Captain Bailey coming on watch.[3]  Navigating southbound on the Lower Mississippi River, pushing a tow of 14 loaded barges approximately 1,000 feet long and 105 feet wide, he took command of the tug just above Bringier Point, which would have been his first steer that morning. Although it was still dark outside, visibility was otherwise good as weather conditions were clear, but the river stage in Baton Rouge was 43 feet, above flood stage.[4]  The current that morning near Mile Marker 170 was estimated between 4 and 6 miles per hour, higher than normal, and it was prudent to be "more careful handling the tow," particularly around points in the river.

As the M/V C. MICHAEL REEVES and its tow were approaching the sharp bend in the Mississippi River to port around Bringier Point at Mile 174 AHP, Captain Bailey decided to "steer" rather than

---

[2] Captain Bailey had rejoined the M/V C. MICHAEL REEVES two days before on March 12, 2019 at Mile Marker 362 near Natchez, as the tug was pushing 20 loaded barges from St. Louis to the New Orleans area.  After he went off watch on the night of March 13, the C. MICHAEL REEVES dropped off six of the barges.
[3] Captain Bailey is qualified and experienced; he has been running towboats since he got his pilot license at age 20 in 1977.
[4] Flood stage occurs when the river is measured at 35 feet and "major" flood stage occurs when the river is measured at 40 feet. A river above flood stage is faster flowing.

"flank" Bringier Point because he believed he could steer safely with the 14 barges (reduced from 20) in tow.[5]  When one cannot safely steer around a bend in the river, flanking is the prudent approach.  Perhaps oversimplifying the maneuver, but in laymen's terms, flanking involves putting the engines in reverse to slow the flotilla's forward speed to the speed of the current, and allowing the current to steer the head of the tow around a bend in the river.

As Captain Bailey steered the tow around Bringier Point, it ended up closer to the west bank than Captain Bailey preferred. Immediately after clearing Bringier Point, the river makes a sharp starboard turn around Point Houmas; together, the two points essentially create an "S" turn in the Mississippi River.  Because Captain Bailey was "able to get around Bringier Point by steering," he "assumed [he] should be able to make it around Point Houmas" the same way.  Because Captain Bailey had to speed up to clear Bringier Point and, given the faster higher river, he "had quite a bit of speed built up" when he started to make the turn at Point Houmas and he could not get his turn started early enough.  As he started steering around Point Houmas, Captain Bailey could not get close enough to slack water underneath the point because the tug and stow started sliding sideways at about 7 miles per hour.  While

---

[5] Captain Bailey explained that he probably would have flanked Bringier and Point Houmas if he had 20 barges in tow.

steering the M/V MICHAEL REEVES around the bend at Point Houmas, just upriver from the Impala Dock, Capt. Bailey "did not cut the point close enough," and the M/V C. MICHAEL REEVES and its tow ended up "sliding" in the high-water, swift-current conditions more than intended or predicted toward the East Bank and the Impala Dock.  He had to wait "until I got past Wade Hampton Light" -- which is between Bringier Point and Point Houmas -- before he could back up.  Since he "did not make the turn," Capt. Bailey went to "Plan B": "try to regroup and flank out" or back down.  It was (later discovered that it was) too late.  Despite the backing-down maneuver -- at some point between 0500 and 0520 hours, when it was still dark[6] -- the head of the M/V C. MICHAEL REEVES' tow allided with the Impala CBU dock and its sacrificial dolphin.  Although Captain Bailey sent someone to see if he had hit the dock, his leadman Lucas Kaelin could not see anything from the head of the C. MICHAEL REEVES's tow because it was so dark.  The M/V C. MICHAEL REEVES continued on its way.

Damage was discovered after daylight.  As a result of the allision, Impala's CBU dock sustained damage to its upstream-offshore sheave platform, upstream walkways, its barge slip fendering system, and to a protective dolphin.

---

[6] Sunrise that morning was at 0714 hours.

On September 13, 2019, Impala Terminals Burnside, LLC sued Marquette Transportation Company, LLC, *in personam*, and the M/V C. MICHAEL REEVES, *in rem*, alleging that the M/V C. MICHAEL REEVES's allision with the Impala Terminal caused "significant damage to Impala's CBU dock, including physical damage to a tripod dolphin, the sheave platform, several aluminum catwalks, and various related structures[;]" and, as a result of the allision caused exclusively by Marquette's negligence, "the CBU dock cannot operate as designed and will be closed for repairs for a significant period of time" such that Impala seeks to recover repair costs, replacement costs, survey costs, and additional tug and barge costs. Impala also requested a warrant *in rem* to arrest the vessel. That same day, the Court granted Impala's motion requesting issuance of a warrant *in rem* to arrest the M/V C. MICHAEL REEVES. Thereafter, the Court granted Impala's motion for leave to file a security bond for $3.75 million posted to stay the execution of *in rem* process against and the arrest of the C. MICHAEL REEVES. This perfected the Court's *in rem* jurisdiction with the bond acting as the substitute *res* to respond to Impala's *in rem* claim. Marquette filed its answer, stating in defense of the verified complaint's allegations, among other things, that Impala had inadequate lighting on its dock on the morning of the allision. After the scheduling order issued, the Court granted Impala's unopposed motion seeking leave to file an amended

complaint to add its subrogated insurer as a party plaintiff;[7] that is, Impala's amended complaint adds as party plaintiff XL Insurance Company SE in its capacity as the contract leader of the underwriters on a Port and Terminal Package Policy of Insurance, Number B0509MARLR1800056, issued to Trafigura Group Pte. Ltd. and Impala Terminals and Impala Warehousing (MI) LLC and affiliated subsidiary companies, including plaintiff Impala Terminals Burnside LLC.[8]

Invoking evidentiary presumptions, both sides now seek partial summary judgment[9] and the plaintiffs move to strike a

---

[7] Marquette did not oppose the request to amend the complaint. Marquette did not file an amended answer.

[8] Thus far, it is alleged in the amended complaint, XL has reimbursed Impala $1,193,104 for repair costs and expenses incurred by Impala under that policy of insurance for losses that Impala's verified complaint seeks to recover from the defendants and, therefore, XL has become subrogated to the rights of Impala. It is alleged that Marquette and the M/V C. MICHAEL REEVES, *in rem*, are liable to XL for $1,193,104 plus expenses, costs, attorneys' fees, and pre and post-judgment interest on all sums awarded and that Impala has retained its claim against the defendants for its deductible of $100,000 and its additional tug costs and barge demurrage claim incurred as a result of the CBU dock being damaged and not able to operate as designed, plus expenses, costs, attorneys' fees, and pre and post-judgment interest on all sums awarded.

[9] Insofar as both sides invoke The Pennsylvania Rule pertaining to liability -- each side argues that the other committed statutory violations and thus must prove that its conduct could not have been a contributing cause of the allision -- the motions are cross-motions; the plaintiffs additionally invoke The Oregon Rule, which creates a rebuttable presumption that a moving vessel breached its duty of care when it allides with a stationary object. Whether either of these presumptions applies; if so, as to which party (and, if both, whether they cancel themselves out); and whether sufficient facts are or will be of record to dispense with these

portion of a witness's testimony, a lay opinion regarding causation.

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, the movant "may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017)(citation omitted).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003); Hathaway v. Bazany, 507 F.3d

_____

presumptions is thus submitted to the Court in the present pending motions.

312, 319 (5th Cir. 2007)("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").   The non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.   Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).   Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.   Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).   Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). And the Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

The Court must not evaluate the credibility of witnesses on a paper record, nor may it weigh evidence. When considering summary judgment motions prior to a bench trial, however, the Court in non-jury cases "has somewhat greater discretion to consider what weight it will accord the evidence" and "to decide that the same evidence, presented to him . . . as a trier of fact in a plenary trial, could not possibly lead to a different result." Jones v. United States, 936 F.3d 318, 321-22 (5th Cir. 2019)(citations, internal quotations omitted).

II.

*A.*

The allision occurred during navigation on the Mississippi River and, thus, the Court has federal admiralty jurisdiction under 28 U.S.C. § 1333 and maritime law governs.

Like an ordinary negligence claim, to succeed on a negligence claim in admiralty, the plaintiff must prove that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff sustained an injury. In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 211 (5th Cir. 2010). Principles of comparative fault apply equally to admiralty cases in general and allision cases in particular[10] such that the Court

---

[10] See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport, 596 F.3d 357, 363 (6th Cir. 2010)(citations omitted)(observing

is tasked with "allocat[ing] damages based upon the parties' respective degrees of fault." In re Omega Protein, Inc., 548 F.3d 361, 370 (5th Cir. 2008)(citation omitted).

To be sure, "[l]iability in collision and allision cases has always been apportioned based on fault." Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC, 615 F.3d 599, 604 (5th Cir. 2010)(citation omitted). "[F]ault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract." Bd. of Comm'rs of Port of New Orleans v. M/V FARMSUM, 574 F.2d 289, 297 (5th Cir. 1978). Put differently, "[t]o give rise to liability, a culpable act or omission must have been 'a substantial and material factor in causing the collision.'" Am. River Transp. Co. v. Kavo Kaliakra SS, 148 F.3d 446, 450 (5th Cir. 1998)(citation omitted). "[W]hen two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding," the Supreme Court has instructed,

> liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

---

that "comparative and contributory negligence ... are venerable doctrines in general [and] turn on principles that have centuries of relevance in the context of admiralty law.").

United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 411 (1975). "Where both parties to a collision are in violation of statutes designed to prevent collisions," the Fifth Circuit has instructed, the Court "may apportion fault between the parties, unless either party proves that its statutory violation was not a substantial contributing cause of the collision." Stolt Achievement, Ltd. v. DREDGE B.E. LINDHOLM, 447 F.3d 360, 364, 370 (5th Cir. 2006)(citation omitted)(noting that "the calibration of culpability simply is not susceptible to any real precision."). Quantifying relative fault is not a "mechanical tally [of] errors[; rather, the Court] must determine, based upon the number and quality of faults by each party, the role each fault had in causing the collision." In re Omega Protein, 548 F.3d at 370 (citing Stolt Achievement, 447 F.3d at 370).

*B.*

Maritime law "uses evidentiary, fault, causation, and other presumptions throughout its resolution of negligence suits." Combo Maritime, Inc., 615 F.3d at 604 (citing THOMAS J. SCHOENBAUM, 1 Admiralty & Mar. Law § 5-18 (4th ed. 2004)). Presumptions regarding fault or breach do not affect the comparative fault regime applicable in maritime collision law. Id. at 607-08 (citations omitted). Here, the presumptions invoked by the parties' papers are the rules of The Oregon and The Pennsylvania.

"It is important to distinguish ... between the presumption of *fault* announced in <u>The Oregon</u> and the presumption of *causation* announced in <u>The Pennsylvania</u>[.]"  <u>In re Mid-South Towing Co.</u>, 418 F.3d 526, 531 n.5 (5th Cir. 2005)(emphasis in original, citations omitted).  The plaintiffs seek partial summary judgment on the issue of liability on the ground that <u>The Oregon</u> Rule applies to establish that Marquette was solely at fault for the allision and on the ground that <u>The Pennsylvania</u> Rule applies because of pilot error amounting to statutory violations.  The defendants seek partial summary judgment that <u>The Pennsylvania</u> Rule is triggered by Impala's failure to light its dock such that Impala shall bear the burden at trial of proving that its failure to light its dock could not have been a cause of the allision.  A closer look at the substance and purpose of these presumptions compels the conclusion that they are inapplicable or unnecessary on this record.

   *1. The Oregon Rule: Whether Fault Should be Presumed*

   The rule of <u>The Oregon</u> creates a presumption of fault that shifts the burden of production and persuasion to a moving vessel who, under her own power, allides with a stationary object.  <u>Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC</u>, 615 F.3d 599, 604 (5th Cir. 2010)(citing <u>The Oregon</u>, 158 U.S. 186, 192-93 (1895)).  This rule merely shifts the burden of production and persuasion on the issue of fault, thus, as a mere "[e]videntiary presumption[] . . . designed to fill a vacuum[; o]nce evidence is

presented . . . presumptions become superfluous because the parties have introduced evidence to dispel the mysteries that give rise to the presumptions." In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005)(citation omitted).[11]

Notably, the alliding-vessel presumption of fault is not "a presumption of *sole* fault. Combo Maritime, 615 F.3d at 608. The presumption under The Oregon has no impact on the doctrine of comparative fault applied in maritime allision cases. See id. at 608-09 (even assuming that the district court properly discarded an analogous presumption, the opposing party is nevertheless "entitled to present evidence of comparative fault at trial."); see also Mid-South Towing, 418 F.3d at 532 ("[Properly cabined the scope of the Oregon rule, which speaks explicitly only to a presumed breach on the part of the alliding vessel, and is not a presumption regarding either the question of causation (either cause in fact or legal cause) or the percentages of fault assigned parties adjudged negligent."). Properly applied, then, that the The Oregon is triggered to presume breach on the part of the alliding vessel's part does not rule out another party's comparative fault.

---

[11] But see Bunge Corp. v. M/V FURNESS BRIDGE, 558 F.2d 790, 795 n.3 (5th Cir. 1977)("[W]e reject the holding of the Third Circuit that when both sides had 'fully presented testimony regarding their version as to what happened prior to the collision ... the presumption disappeared as a matter of law.").

Application of The Oregon Rule is "properly confined to the issue of breach only -- not causation" and it "does not supplant the general negligence determination which requires a plaintiff to prove the elements of duty, breach, causation and injury by a preponderance of the evidence." Combo Maritime, Inc., 615 F.3d at 605 (citation omitted). A defendant rebuts the presumption of The Oregon and may defeat liability if it demonstrates: "(1) that the allision was the fault of the stationary object; (2) that the moving vessel acted with reasonable care; or (3) that the allision was an unavoidable accident." Id. (citation omitted). If the vessel rebuts the presumption, for example, by demonstrating that the allision was the fault of the stationary object, then the vessel absolves itself of liability. See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport, 596 F.3d 357, 363 (6th Cir. 2010). However, the vessel may advance a comparative fault defense against the stationary object and need not rebut the presumption to simply "relieve itself of *some* liability[.]" See id. (emphasis in original).

Notably, The Oregon presumption "only applies in the absence of evidence of fault." In re Omega Protein, Inc., 548 F.3d 361, 368-69 (5th Cir. 2008). There, a fishing vessel allided with a stationary oil platform. Following a bench trial, the district court found comparative fault: the platform was unlit and the vessel's pilot failed to use his functional navigational aids and

maintain a proper lookout.  Id.  In apportioning fault for the allision and damages 50-50, the district court also found that the allision was caused by a combination of this pilot error and absence of lighting.  Id.

If a moving vessel proves that a stationary object was unlit, then regardless of whether this absence of lighting is a statutory violation (and negligence *per se*) or "merely" ordinary negligence, the Court properly disregards the presumption of The Oregon.  See id. at 368-69 (finding no error of fact or law and affirming district court's decision to disregard The Oregon presumption where owner of fishing vessel proved that oil platform was unlit, which constituted a statutory violation).

*2. The Pennsylvania Rule:   Whether the Burden of Proving Causation Should Shift to a Statutory Violator*

The Pennsylvania Rule concerns the burden of proving causation: any party to a maritime accident who violates a federal statute is presumed to be at fault, and thus, has the burden of proving that the violation could not have been a contributing cause of the allision.  See The Pennsylvania, 86 U.S. 125 (1873).  In interpreting the scope of The Pennsylvania Rule, courts have held that fault is not only determined by the breach of a statute, but also by resort to ordinary negligence principles, or reasonableness under the circumstances.  See Tidewater Marine, Inc. v. Sanco Int'l., Inc., 113 F. Supp. 2d 987, 988 (E.D. La.

16

2000)(citation omitted).  That is, "[e]ven without a statutory violation, liability may be imposed simply where there is negligence." Rose Crewboat Services, Inc. v. Wood Resources, LLC, 425 F. Supp. 3d 668, 674 (E.D. La. 2019)(Vance, J.)(quoting Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM, 447 F.3d 360, 364 (5th Cir. 2006)).

To be sure, this evidentiary presumption gives way to factual realities.  The Pennsylvania Rule concerns the burden of proof for showing causation; it does not determine ultimate liability for damages.  Sheridan Transp. Co. v. United States, 834 F.2d 467, 478 (5th Cir. 1987).  It places on the statutory violator (or the duty-breacher) the burden of showing that the violation could not have caused the accident.  Id. at 476.  The rule may be applied against one or both parties to an allision.  Id. at 478 (noting that the Fifth Circuit has "held that The Pennsylvania rule applies in allision cases where those responsible for properly marking stationary objects in navigable waters ... failed to do so.").  All parties against whom the rule is applied may be liable "if their negligence proximately caused the accident, and damages are to be assessed in accordance with the principles of comparative negligence." Id.

### 3. Clashing or Dispelling Evidentiary Presumptions

"[D]esigned to fill a factual vacuum[,]" evidentiary presumptions have no applicability where "the parties have

17

introduced evidence to dispel the mysteries that gave rise to the presumption[s]." See In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005); Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp., 596 F.3d 357, 362 (6th Cir. 2010)("the Oregon Rule creates a *prima facie* case of negligence, not a final case of sole negligence."); Combo Maritime, 615 F.3d at 606-08 ("If the two parties to a[n] allision suit each have a presumption of fault against them, then it is likely that the presumptions would merely cancel each other out.").[12]

Insofar as The Oregon Rule "presumptively allocates fault when the circumstances of an allision are [relatively] unknown," many courts decline to presume fault where there is a developed factual record concerning the circumstances of an allision. See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp., 596 F.3d 357, 362 (6th Cir. 2010); see also Slatten, LLC v. Royal Caribbean Cruises Ltd., No. 13-673, 2014 WL 5500701, at *5 (E.D. La. Oct. 30, 2014)(Vance, J.)("The record at trial will contain sufficient evidence on which the Court, as the finder of fact, can determine the liabilities of the parties."); St. James Stevedoring Partners, LLC v. Motion Navigation LTD., No. 13-541, 2014 WL 3892178, at *6-

---

[12] But see Bunge Corp. v. M/V FURNESS BRIDGE, 558 F.2d 790, 795 n.3 (5th Cir. 1977)("[W]e reject the holding of the Third Circuit that when both sides had 'fully presented testimony regarding their version as to what happened prior to the collision ... the presumption disappeared as a matter of law.").

7 (E.D. La. Aug. 6, 2014)(finding application of The Oregon and The Pennsylvania unnecessary where evidence was presented on the issues of fault and causation).

### III.

The parties submit that undisputed facts compel application of these evidentiary presumptions. The nature of allisions generally and the moving vessel's captain's navigational errors trigger application of The Oregon and The Pennsylvania Rules, the plaintiffs submit, and shifts the burden to the defendants to show that the vessel is not wholly at fault and that its sole fault did not cause the allision. The defendants counter and submit that Impala's failure to light its dock triggers application of The Pennsylvania Rule and shifts the burden to the plaintiffs to demonstrate that this absence of lighting was not a contributing cause of the allision. But The Oregon Rule is not a rule of ultimate liability, and The Pennsylvania Rule is not a rule of ultimate causation. Because these evidentiary presumptions are rendered superfluous on a fulsome record, the Court finds it improper to apply them here. And because genuine issues of material fact concerning comparative negligence and causation are evident, partial summary judgment is not warranted.

The Oregon Rule would appear to apply to the abstract facts here: a moving vessel allided with a stationary dock and its

sacrificial dolphin.  But a closer look at the concrete record reveals that there is no factual void to fill concerning the vessel's negligence and, thus, *presumptively* allocating fault is (or will be at trial) unnecessary.  Here, the defendants (Marquette and its vessel) do not dispute that they *actually* bear some (if not most) responsibility for the allision, or at least there is no quarrel that the record supports a finding that experienced Captain Bailey, in hindsight, given the high-water conditions, admits that perhaps he should have flanked rather than steered the Points when he came on duty that morning.  The record thus supports a finding that the vessel bears some fault for the accident.  Because the Court need not presume breach on the part of the alliding vessel in the face of factual reality, resort to <u>The Oregon</u> is simply unnecessary.

Where, as here, the record supports a finding that Captain Bailey (and thus the defendants) bear some responsibility for the allision, the question is thus better stated as: even where the vessel is negligent, may it shift some responsibility for the accident to the dock owner/operator due to its alleged comparative fault?  To answer this question, the Court need not indulge <u>The Oregon</u>'s evidentiary presumption.  Rather, the vessel has simply offered some support for its comparative fault defense and thus the question becomes whether it may shift some responsibility for the accident to the dock operator due to its *alleged* comparative

fault in failing to have navigation lights on the dock, or otherwise failing to have then-existing lights illuminated before dawn at the time of the allision.[13] Marquette's comparative fault defense simply renders superfluous The Oregon Rule.[14] And genuine disputes concerning material facts prevent the Court from resolving the comparative fault issue.[15]

So, too, regarding the issue of causation. Patent factual controversies preclude partial summary judgment. Both sides invoke The Pennsylvania Rule, which (again) holds that any party to an allision that is in violation of a statutory rule intended

---

[13] The parties hotly dispute the issue of lighting and its impact on the allision.

[14] The plaintiffs take issue with what they perceive as Marquette's failure to contest their invocation of The Oregon Rule. This is simply another illustration of how the parties' attempts to contort application of gap-filling evidentiary presumptions to actual facts in a developed summary judgment record, replete with factual disputes, defies common sense. Instead of seeking to rebut the evidentiary presumption through demonstration of one of three scenarios sanctioned by the case literature, the vessel may invoke the common law tort doctrine (and here, defense) of comparative fault. This is precisely what Marquette does here. Because it is not a rule of *ultimate* liability, Marquette does not need to rebut the gap-filling presumption to relieve itself of *some* liability; thus, Marquette essentially assumes or attempts to avoid application of The Oregon Rule by invoking The Pennsylvania Rule. Again, the parties' singular focus on evidentiary presumptions obviated by a developed summary judgment record is simply unhelpful in the task of resolving the patent factual issues presented by the record.

[15] Pretermitting whether the Impala's USACE permit required navigational lights, Marquette submits that Impala bears some fault for the incident due to Impala's failure to take reasonable precautions to install navigational lights (or to illuminate the lights that were installed, about which the witnesses differ) on its CBU deck and dolphin in a navigable waterway.

to prevent allisions is presumed to be a cause of the accident. Again, each side finger-points, submitting that the other violated statutes or regulations which caused the allision.  Any utility of this evidentiary presumption is dispelled by the facts of record. And those facts material to causation are contested, making partial summary judgment unwarranted.

In their quest to persuade the Court that the undisputed facts in the record support a finding that the vessel's piloting errors were the *exclusive* cause of the allision, the plaintiffs overlook comparative fault generally and disputed issues of material facts specifically; the plaintiffs read Captain Bailey's extensive testimony too narrowly and downplay Marquette's expert pilot's submission on causation.[16]  For its part, Marquette fails to show by a preponderance of the evidence (on this record) that the absence of navigational lights (or otherwise that the failure to illuminate the lights then-existing on the CBU dock) constitutes a statutory violation that contributed to cause the allision sufficient to warrant partial summary judgment in its favor.  As with liability, there are material facts in the record probative

---

[16] Captain Gregory Smith opines and Impala contests:
>    The Impala Burnside dock in question protrudes into the river from the levee approximately 488 feet.  It was an obstruction to navigation and was not properly illuminated.  If it had been properly illuminated, Captain Bailey could have maneuvered his tow in a slightly different manner to avoid or minimize the damages from the allision.

of each side's causation narrative, and the parties' genuine disputes preclude partial summary judgment.

Neither side satisfies its burden to show that no genuine issues of material fact remain for trial. Each side introduces evidence supporting their liability and causation narratives; neither is entitled to judgment as a matter of law on this extensive paper-only record. Liability, fault-apportionment, causation, and damages will be bench-tried starting on April 12, 2021.

\*\*\*

The parties clash over whether and which admiralty presumptions apply. But this singular focus on evidentiary presumptions elevates form over substance, common sense, and the longstanding admiralty tradition embracing comparative fault in allision cases. That both sides submit competing evidence relevant to fault and causation renders indulging presumptions unnecessary. The all-or-nothing position embraced by the parties is simply inapplicable to a summary judgment record containing ample facts and factual disputes, most notably, Marquette's comparative negligence defense. On this fulsome record, the evidentiary presumptions are superfluous; there is simply no factual void to fill. The principal question presented and unanswered by the record is whether the vessel will prove its comparative fault

defense at trial.  The summary judgment record provokes genuine issues for trial as to comparative fault and causation.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the parties' motions for partial summary judgment are DENIED and the plaintiffs' motion to strike is DENIED as moot.

New Orleans, Louisiana, March 24, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE